# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| JOHN PAUL BOYD, | |
| Plaintiff, | Case No.: 4:23-cv-00237-Y |
| vs. | |
| RENTGROW, INC., TRANSUNION RENTAL SCREENING SERVICES, INC., AND CLEARA, LLC Defendants. | **Honorable Terry R. Means** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

John Paul Boyd ("Plaintiff") by and through the undersigned counsel brings the following Complaint against Defendants RentGrow, Inc., ("RentGrow"), TransUnion Rental Screening Services, Inc., ("TURSS"), and Cleara, LLC, ("Cleara") (collectively, the "Defendants") for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that each of the Defendants published to Plaintiff's potential landlords, falsely portraying Plaintiff as having been **convicted** of a criminal offense for **terroristic threats.**

## **INTRODUCTION**

1.      This is an individual action for damages, costs, and attorneys' fees brought against the Defendants pursuant to the FCRA.

2.      Each of the Defendants is consumer reporting agencies ("CRA") that compile and maintain files on consumers on a nationwide basis. The Defendants sell consumer reports – also known as tenant screening reports – generated from their databases and furnish these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions concerning prospective borrowers and tenants.

3.      Each of the Defendants assembled and published inaccurate tenant screening reports to Plaintiff's multiple prospective landlords, including an inaccurately reported **conviction for terroristic threats**.

4.      Plaintiff's prospective landlords denied Plaintiff's housing applications on the basis of the flagrantly inaccurate criminal information that each of the Defendants published to said prospective landlords.

5.      The Defendants' inaccurate reporting could have easily been avoided had either of the Defendants performed a cursory review of the widely available underlying public court records from Tarrant County, Texas concerning the

**conviction for terroristic threats** prior to publishing the information to Plaintiff's prospective landlords.

6.    Had either of the Defendants performed even a cursory review of the underlying public court records, each would have discovered that Plaintiff has never been convicted of **terroristic threats**.

7.    The Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. The Defendants' failures to employ reasonable procedures resulted in Plaintiff's report being flagrantly inaccurate.

8.    Each of the Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9.    The Defendants' inaccurate reports cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10.    As a result of each of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report;

damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11.     As a result of each of the Defendants' conduct, action, and inaction, Plaintiff brings claims against the Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12.     Plaintiff is a natural person residing in Arlington, Texas, within the confines of Tarrant County, Texas, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13.     RentGrow is a Massachusetts corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at 177 Huntington Avenue, Suite 1730, Boston, MA 02215.

14.     TURSS is a Delaware corporation doing business throughout the United States, including the State of Texas and this District, and has a principal place of business located at 555 W Adams Street, Chicago, IL 60661.

15.    Cleara is a Pennsylvania Corporation doing business throughout the United States, including the State of Texas and in this District, and has a principal place of business located at 1049 Woodland Way, Hagerstown, MD 21742.

16.    Among other things, each of the Defendants sell consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

17.    Defendants are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, each regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and the Defendants use interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one the Defendants prepared concerning Plaintiff.

25.     The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

26.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like the Defendants, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.     Each of the Defendants disregarded their duties under the FCRA with respect to Plaintiff's tenant screening reports.

## DEFENDANTS' ILLEGAL BUSINESS PRACTICES

30.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31.    Tenant screening reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

32.    Tenant screening companies, like the Defendants, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33.    Given that the Defendants are in the business of selling tenant screening reports, each of the Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

34.    The Defendants place their business interests above the rights of consumers and report such inaccurate information because it is cheaper for the Defendants to produce reports containing information that is inaccurate and incomplete than it is for the Defendants to exert proper quality control over the reports prior to their being provided to each of the Defendants' customers.

35.    The Defendants report such erroneous and incomplete information because each wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36.    Each of the Defendants charge their customers the same price for reports that are flagrantly inaccurate as they do for accurate reports.

37.    Appropriate quality control review of Plaintiff's report would have made clear that the Defendants were reporting a **conviction** for a charge that was in fact dismissed.

38.    As a provider of tenant screening reports, each of the Defendants should be aware of the FCRA requirements and are likely members of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTUAL ALLEGATIONS AS TO TURSS

**Plaintiff Completed Rental Applications Through Apartments.com**

39.     In or about January 19, 2023, Plaintiff began searching for a new home. Specifically, Plaintiff was searching for a home that was suitable for his young daughter, in a safe neighborhood, clean, near good schools, and within his budget.

40.     Plaintiff searched Apartments.com, an apartment rental directory, for a suitable place for him and his young daughter to live.

41.     After expending a tremendous amount of effort in finding a home that matched his very particular specifications, Plaintiff set his sights on five possible homes.

42.     Plaintiff submitted applications through Apartments.com to rent five apartments in order to ensure he and his daughter had multiple options from which to choose. Plaintiff was very excited to tour each of the apartments in hopes of finding the best home for his family.

43.     Plaintiff reasonably anticipated being quickly approved to rent all five apartments, as all were within his price range.

44.     As part of the application process, Plaintiff was required to consent to a background report, to be prepared by TURSS. Plaintiff had no concerns about issues in his background and consented to the background report without hesitation.

45.     Therefore, on or about January 19, 2023, Plaintiff consented to allow TURSS to prepare a background report concerning Plaintiff.

**TURSS Published an Inaccurate Tenant Screening Report to Apartments.com**

46.     On or about January 19, 2023, Apartments.com ordered a tenant screening report concerning Plaintiff from TURSS.

47.     The same day, on or about January 19, 2023, TURSS sold a tenant screening report concerning Plaintiff to Apartments.com, wherein TURSS published information including a compilation of Plaintiff's credit history, criminal history, and civil litigation history.

48.     The tenant screening report published by TURSS ("TURSS Report") to Apartments.com, is a consumer report regulated by the FCRA.

49.     Within the TURSS Report, TURSS published inaccurate information about Plaintiff.

50.     Specifically, TURSS reported inaccurate information concerning a criminal offense for the charge of "TERRORISTIC THREAT CAUSE FEAR OF IMMINENT SBI."

51.     Problematically, in a field labeled "COURT/JURISDICTION," TURSS reported "TX Dept of Corrections (Probation)."

52.     The underlying public records associated with the criminal court case in question make clear that the charge against Plaintiff in this matter was **dismissed** outright.

53.     Plaintiff never served probation with the Texas Department of Corrections – or with any other law enforcement agency – in relation to the the underlying criminal record.

54.     By definition, in order for a criminal court to sentence a defendant to probation, an adjudication of guilty must take place.

55.     Therefore, the fact that TURSS reported the word "Probation" in association with this record by definition gives the reader the impression that Plaintiff was found guilty and was sentenced to probation.

56.     Several of the additional fields that TURSS reported in connection with this record contained blanks, with no information in them at all. This includes fields bearing the labels "Case Disposition," "Disposition Date," "Filing Date," "Case #," "Offense Date," "Charge Date," "Disposition," "Probation Term," and "Probation Date."

57.     Importantly, **none** of the fields TURSS reported in connection with this record contained the word "dismissed."

58.    TURSS' reporting is clearly inaccurate, as Plaintiff's criminal charge was **dismissed**. At minimum, this reporting is materially misleading as it gives the reader a false impression that Plaintiff's crime resulted in probation.

59.    The sole reason that TURSS published the inaccurate and misleading information about Plaintiff was that TURSS failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Apartments.com.

60.    Had TURSS followed reasonable procedures, it would have discovered that the criminal record for **terroristic threats** was actually **dismissed**, and that Plaintiff did not serve any probation in connection with the record.

61.    In preparing and selling a consumer report about Plaintiff, wherein TURSS published to Plaintiff's prospective landlords' inaccurate information about Plaintiff, TURSS failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff's Housing Applications Are Denied
Due to TURSS' Inaccurate Reporting**

62.    On or about January 21, 2023, Plaintiff was notified via the Apartments.com portal that his several of his housing applications were denied as a result of the inaccurate and misleading criminal record information contained within the TURSS tenant screening report.

63.     Shortly thereafter, Plaintiff obtained a copy of the TURSS Report and was shocked and humiliated upon learning that TURSS had published the inaccurate information conveying that Plaintiff was **convicted** of the criminal offense of **terroristic threats** to Apartments.com.

64.     On or about January 21, 2023, Plaintiff contacted Apartments.com and informed it that the TURSS Report was inaccurate. Specifically, Plaintiff explained that he had never been convicted of the charge in question, had never served probation for the charge in question, and in fact that the case had been dismissed completely.

65.     In fact, to set the record straight to further his housing applications on Apartments.com, Plaintiff even obtained copies of the underlying court records and provided the same to Apartments.com.

66.     Plaintiff was incredibly distressed at the situation because his current lease was due to end in February 2023, and he feared that unless the record was corrected with Apartments.com immediately, he would be unable to find a reasonable and decent home for him and his daughter.

67.     Plaintiff was extremely panicked, confused, and concerned about the impact of the inaccurate reporting that he was convicted of **terroristic threats**, both

in relation to the Apartments.com applications, but also the impact of the same on his future.

68.    Despite Plaintiff having contacted Apartments.com to notify it that the TURSS Report was flagrantly inaccurate, Apartments.com provided Plaintiff with no response, nor any indication it would look into the inaccurate reporting.

69.    Plaintiff reasonably believes that due to TURSS' inaccurate reporting in the first instance, the landlords, owners, and/or property managers for the properties to which Plaintiff submitted applications formed a negative opinion concerning Plaintiff and/or moved on to other candidates upon seeing the inaccurate information published in the TURSS Report.

70.    The inaccurate information reported by TURSS concerning Plaintiff cost him a housing opportunity that met his needs, including in terms of affordability, safety, and proximity to work, friends, and family.

71.    The injuries suffered by Plaintiff as a direct result of TURSS' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, TURSS' conduct would have given rise to causes of action based on defamation and invasion of privacy.

72.    As a result of TURSS' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities;

loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## FACTUAL ALLEGATIONS AS TO RENTGROW

### Plaintiff Completed a Rental Application with TwentyOne15 Apartments

73.    Immediately following the denials of Plaintiff's Apartments.com applications, Plaintiff frantically began searching for alternative housing.

74.    Plaintiff again expended a significant amount of effort to find a home which would meet his specific needs.

75.    Plaintiff identified TwentyOne15 Apartments ("TwentyOne15") as an optimal home, and on or about January 23, 2023, Plaintiff completed an application for the same.

76.    As part of Plaintiff's application, he was required to consent to a background report, this time to be prepared RentGrow.

77.    Still reeling from the severely distressing circumstances surrounding the inaccurate TURSS Report, Plaintiff was understandably trepidatious about undergoing another background report. However, because a completely separate

company was involved, Plaintiff had hopes that his application would not be denied as a result of another inaccurate background report.

78.     Therefore, on or about January 23, 2023, Plaintiff consented to allow RentGrow to prepare a background report concerning Plaintiff.

**RentGrow Published an Inaccurate Tenant
Screening Report to TwentyOne15**

79.     On or about January 23, 2023, TwentyOne15 ordered a tenant screening report concerning Plaintiff from RentGrow.

80.     The same day, on or about January 23, 2023, RentGrow sold a tenant screening report concerning Plaintiff to TwentyOne15, wherein RentGrow published information including a compilation of Plaintiff's credit history, criminal history, and civil litigation history.

81.     The tenant screening report published by RentGrow ("RentGrow Report") to TwentyOne15, is a consumer report regulated by the FCRA.

82.     Within the RentGrow Report, RentGrow published inaccurate information concerning Plaintiff.

83.     In the RentGrow Report, RentGrow reported one criminal record: "Terroristic Threat Cause Fear of Imminent SBI."

84.     Like TURSS, the reporting from RentGrow conveyed that Plaintiff served probation for this crime, when in fact the case was **dismissed**.

85.    Specifically, the RentGrow report included "TX DOC PAROLEES" in a field labeled "Database," and "DOC Supervision" in a field labeled "Disposition."

86.    In other words, RentGrow's reporting undeniably conveyed that the outcome of Plaintiff's criminal court case was Plaintiff being subject to the supervision of the Texas Department of Corrections, which clearly conveys that Plaintiff was **convicted**.

87.    This is inaccurate because, as stated herein, Plaintiff was **never** convicted of this offense, and the court case was **dismissed** outright.

88.    Importantly, the word "dismissed" does not appear anywhere in the RentGrow Report.

89.    RentGrow published inaccurate, or at minimum, materially misleading information about Plaintiff.

90.    The sole reason that RentGrow published the inaccurate and misleading information about Plaintiff was that RentGrow failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to TwentyOne15.

91.    Had RentGrow followed reasonable procedures, it would have discovered that the underlying criminal record was **dismissed**, and that Plaintiff never served probation in connection with the record.

92.    In preparing and selling a consumer report about Plaintiff, wherein RentGrow published to Plaintiff's prospective landlord inaccurate information about Plaintiff, RentGrow failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

## Cleara Provided Inaccurate Information to RentGrow

93.    Following the filing of the immediate litigation, Plaintiff learned – as a result of discovery in the immediate litigation – that RentGrow obtained the criminal records at issue from Cleara.

94.    Upon information and belief, RentGrow's inclusion of Plaintiff's inaccurate criminal record was based on, and in reliance on, a consumer report provided by Cleara.

95.    Cleara's provision of information, including the criminal records at issue in this case, were based on Cleara's own database and records and its public records searches.

96.    Cleara obtains criminal record information from Texas courts and the Texas Department of Corrections.

97.    Cleara represents on its website that its "modern approach" "combines billions of records searched without own proprietary data, innovative processes utilizing machine learning and artificial intelligence."[1]

98.    Further, Cleara proclaims on its website that it relates to the provision of criminal records, it maintains the most powerful "multi-state, multi-jurisdictional, multi-county search in the industry consisting of over 1,000 unique sources and 650 records."[2]

99.    Yet, despite Cleara's online representations, Cleara reported that Plaintiff served probation for the crime of "Terroristic Threat Cause Fear of Imminent SBI," when in fact the case was dismissed.

100.    Cleara should not have reported that Plaintiff was convicted to RentGrow when, in fact, Plaintiff's case was dismissed.

101.    The sole reason that Cleara provided the inaccurate and misleading information about Plaintiff to RentGrow was that Cleara failed to follow reasonable procedures to assure the maximum possible accuracy of the information it provided within the tenant screening report RentGrow continued to sell about Plaintiff to TwentyOne15.

---

[1] *See* Clara, The Cleara Difference, https://cleara.com/company/the-cleara-difference (last visited on August 22, 2023).
[2] *See* Clara, Resources, https://cleara.com/resources/ (last visited on August 22, 2023).

102.   Had Cleara followed reasonable procedures, it would have discovered that the underlying criminal record was **dismissed**, and that Plaintiff never served probation in connection with the record.

103.   In preparing and selling a consumer report about Plaintiff, wherein RentGrow continued to publish to Plaintiff's prospective landlord inaccurate information about Plaintiff, Cleara failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

## TwentyOne15 Denies Plaintiff's Housing Application

104.   On or about January 23, 2023, Plaintiff was notified by TwentyOne15 that his housing application had been denied due to the inaccurate criminal record information contained within the RentGrow Report.

105.   Shortly thereafter, Plaintiff obtained a copy of the RentGrow Report and was again shocked and humiliated upon learning that he was again the victim of flagrantly inaccurate reporting, this time at the hands of RentGrow.

106.   Plaintiff was also angry and frustrated to see that within the RentGrow report, RentGrow included an entry labeled "Status," which conveyed the results of each search, and whether the subject of the report met the property requirements with respect to each search.

107.   Each of these fields included either "Complete," "No Matches Found," or "Meets Property Requirements," with one glaring exception. The field labeled "Criminal Search" contained a status which read "Does Not Meet Property Requirements."

108.   On or about January 26, 2023, still desperate to secure housing before his current lease expired, and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff contacted RentGrow and disputed its inaccurate reporting.

109.   Plaintiff identified himself and provided information to RentGrow to support his dispute.

110.   Specifically, Plaintiff explained that the criminal record being reported in the RentGrow Report inaccurately reflected that Plaintiff was **convicted**, and failed to convey the truth – namely, that Plaintiff's case was **dismissed**.

111.   In his dispute, Plaintiff specifically asked RentGrow to investigate and correct its reporting in any tenant screening report it issued concerning Plaintiff.

112.   On or about January 27, 2023, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and updated its inaccurate and misleading reporting. Specifically, RentGrow conceded its

inaccurate and misleading reporting by issuing a corrected report wherein the terroristic threat record was deleted entirely.

113.    RentGrow also communicated to Plaintiff that it had issued a corrected tenant screening report to TwentyOne15.

114.    Plaintiff was optimistic that his rental application with TwentyOne15 would now be approved, as all of the fields in the RentGrow Report now read "Meets Property Requirements."

115.    Plaintiff followed up with TwentyOne15 in hopes that the application for housing would be approved.

116.    Unfortunately, despite meeting all of TwentyOne15's requirements, Plaintiff's application was still denied.

117.    Plaintiff reasonably believes that the TwentyOne15 denial was as a direct result of TwentyOne15 learning of the flagrantly inaccurate information concerning Plaintiff, and that the proverbial well had been poisoned.

118.    RentGrow's false report cost Plaintiff a housing opportunity that met he and his daughter's needs, in terms of affordability, safety, and proximity to work, friends, and family.

119.    The injuries suffered by Plaintiff as a direct result of RentGrow's erroneous reporting are the type of injuries that the FCRA was enacted to address.

Under common law, RentGrow's conduct would have given rise to causes of action based on defamation and invasion of privacy.

120.  As a result of RentGrow's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## Plaintiff's Additional Damages Caused by the Defendants

121.  As a result of the conduct of the Defendants, Plaintiff has sustained severe emotional distress. Specifically, the circumstances surrounding Plaintiff's inability to secure housing due to inaccurate background reports from each of the Defendants caused Plaintiff a substantial amount of undue stress and anxiety.

122.  Plaintiff has been particularly concerned with his stress levels. In late 2022, Plaintiff was diagnosed with a brain aneurysm and is in the process of seeking treatment for the same. Plaintiff's physician made clear to Plaintiff that he needed to do everything in his power to keep his stress levels low, lest he seriously endanger his life.

123.    Following the expiration of Plaintiff's lease, Plaintiff had no place for he and his daughter to go. The night after Plaintiff's lease expired, Plaintiff was forced to check-in to a motel with his daughter.

124.    Shortly thereafter, in or around late February 2023, Plaintiff was forced to ask his ex-partner, and the mother of Plaintiff's daughter, if Plaintiff and his daughter could stay with her while Plaintiff's housing issues were resolved.

125.    Even the act of being forced to ask his ex-partner was hugely embarrassing for Plaintiff, as it conveyed that Plaintiff – a grown man – was unable to provide housing for he and his daughter.

126.    Moreover, this was particularly problematic, embarrassing, and stressful for Plaintiff, as he and his ex-partner are presently engaged in a custody battle in family court. Plaintiff now harbors reasonable concerns that his frustrated living circumstances will be used against him in this family court matter.

127.    Plaintiff and his daughter currently reside with Plaintiff's ex-partner. This living situation is untenable to say the least. Beyond the frustrations associated with living with a former partner, the living situation is confined. As a result, Plaintiff has been forced to sleep on a couch, rather than a bed.

128.    Moreover, as a result of the onset of severe stress and anxiety, Plaintiff has experienced extreme issues with his inability to sleep most nights. Many nights,

Plaintiff struggles to fall asleep and/or stay asleep due to his stress and anxiety levels. Since Plaintiff's many housing denials at the hands of the Defendants, Plaintiff has experienced multiple instances where he was unable to sleep for a period of more than 48 hours.

129.   As a result of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **15 U.S.C. § 1681e(b)**
### **Failure to Follow Reasonable Procedures to**
### **Assure Maximum Possible Accuracy**

130.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

131.   Each of the Defendants is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

132.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

133.   At all times pertinent hereto, the tenant screening reports prepared by each of the Defendants were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

134.   Each of the Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report each sold concerning Plaintiff, as well as the information each published within the same.

135.   As a result of each of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening reports; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

136.   Each of the Defendants willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering each individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, each of the Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

137.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from each of the Defendants individually in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

  i.   Determining that each of the Defendants negligently and/or willfully violated the FCRA;
 ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;
iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,
 iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Date: August 22, 2023

CONSUMER ATTORNEYS
*/s/ Kendra Penningroth*
Kendra Penningroth, AZ Bar #037119
9330 LBJ Freeway, Suite 900
Dallas, Texas 75243
8245 N. 85th Way
Scottsdale, AZ 85258
E: kpenningroth@consumerattorneys.com
T: 480-626-1447

JAFFER & ASSOCIATES PLLC
Shawn Jaffer, State Bar No. 24107817
Allen Edgar Robertson III
State Bar No. 24076655
5757 Alpha Rd, Suite 580
Dallas, TX 75240
T: 214.945.0000
F: 888.509.3910
E: Attorneys@jaffer.law

*Attorneys for Plaintiff John Paul Boyd*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 22, 2023, a true and correct copy of the above and foregoing document was filed with the Court via CM/ECF and served on all parties which have requested electronic notification and personal copies will be delivered to the new parties added to the case.

*/s/ Kendra Penningroth*
Kendra Penningroth